UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADE BROWN #884273,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                   Case No. 1:18-cv-554

UNKNOWN CONKLIN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

The Court has before it Defendants' Motion for Summary Judgment. (ECF No. 124.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), has sued MDOC employees Walter Conklin, Kevin Burns, Joseph Martens, Eric Simon, Amy Moody, Dwayne Watkins, Todd Powers, L. Hengesbach, Jack Garner, and Erik Elliot, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Conklin, Burns, Martens, Simon, Watkins, Powers, Hengesbach, Gardner and Elliot violated Plaintiff's Eighth Amendment rights by using excessive force on Plaintiff, and Defendant Moody was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. The events that form the basis of Plaintiff's claims occurred at the Ionia Correctional Facility (ICF).

On November 15, 2017, Defendant Conklin went to Plaintiff's cell and told Plaintiff that he was doing shakedowns.[1] Corrections Officers Conley and Vennurtrick told Plaintiff to cuff up for a shakedown but Plaintiff refused the command.[2] (ECF No. 128-1 at PageID.1180.) Defendant Conklin returned to Plaintiff's cell and asked Plaintiff why he was refusing to come out. Plaintiff responded that prison staff had already shaken down his cell twice that week and destroyed his cell and were harassing him. Conklin responded, "Okay, [I'm going] to gas you," and walked away. Shortly thereafter, Defendant Burns began to shut other prisoners' windows. Plaintiff told Burns that he wanted to comply and cuff up and did not want to be gassed. Burns responded, "Day Day [Plaintiff's nickname] don't back down now[,] we're going to gas you whether you like it or not." (*Id.*)

About ten minutes later, Conklin returned with the gas team. Plaintiff knew that Conklin was on the team, but he could not identify the other team members because they were wearing masks and combat gear. Conklin ordered Plaintiff to the door and to place his hands behind his back to be cuffed up. Plaintiff complied and loudly screamed, "I am cuffing up and complying please don't gas me" for the hand-held video camera. Although Conklin continued to order Plaintiff to comply, Plaintiff complied as directed and continued yelling "don't gas me." (*Id.*) While Plaintiff had his hands behind his back with his back to the cell door, Conklin opened Plaintiff's food slot, said Plaintiff was refusing to comply with his orders, and sprayed tear gas on Plaintiff and closed the slot. Plaintiff turned around and asked Conklin why he gassed Plaintiff when he was complying. Conklin waited a minute or two and gave Plaintiff the same order.

---

[1] This version of events is based on Plaintiff's affidavit submitted in support of Plaintiff's response to Defendants' motion. (ECF No. 128-1.)

[2] Plaintiff previously named Conley and Vennurtrick as Defendants but dismissed them in his Second Amended Complaint after he determined through discovery that they were not part of the team that gassed Plaintiff. (ECF No. 59 at PageID.241.)

Plaintiff placed his hands behind his back and yelled for the camera that he was complying and cuffing up and pleaded not to be gassed. (*Id.* at PageID.1181.) While Plaintiff's back was turned toward the cell door, Conklin again yelled that Plaintiff was not complying and gassed Plaintiff a second time. Plaintiff turned around and screamed at Conklin, "why you keep gassing me, you are trying to kill me, your [sic] not going to let me cuff up." Conklin waited several more minutes before again telling Plaintiff to cuff up. Conklin again stated that Plaintiff was not complying. Because Plaintiff knew that the gas can had three bursts, he realized that Conklin was about to gas him again. Therefore, Plaintiff quickly turned and grabbed his food slot and put his arms and hands outside, screaming for them to cuff him. Defendants Martens and Simon began punching Plaintiff's arms and hands, bending his fingers, and banging his arms and hands in the food slot about ten times. Plaintiff screamed for them to stop but they would not. Conklin then turned the gas can to a "grenade" and dropped it right in front of Plaintiff's face, where it exploded all over Plaintiff's body and in his face. Conklin again ordered Plaintiff back to the door to cuff up. Plaintiff complied, and this time the gas team put cuffs on Plaintiff and took him to the shower. (*Id.*)

Plaintiff claims that he received a ten-second shower with no soap, when he should have been given a fifteen-minute shower and soap. Defendant Nurse Moody examined Plaintiff after the shower and asked him if he was in pain and needed medical attention. Plaintiff told her that his arms and hands were cut, scraped, bleeding, and swollen, and his body was on fire. Nurse Moody told Plaintiff that he was fine and left. Plaintiff was taken back to his cell, where the gas remained in the air. (*Id.* at PageID.1182.)

3

## II.     MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.     DISCUSSION

#### A.     Failure to Exhaust[3]

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA that the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

---

[3] Plaintiff argues, persuasively, that Defendants waived their right to raise the issue of exhaustion because they waited until after the close of all discovery to file a motion for summary judgment raising exhaustion. (ECF No. 128 at PageID.1146–47.) Plaintiff notes that the Case Management Order provides that, if any defendant files a motion raising only failure to exhaust administrative remedies, a period of 45 days will be allowed for the plaintiff to conduct discovery on the issue of exhaustion. (ECF No. 99 at PageID.583.) Plaintiff argues that by waiting until the close of all discovery and filing a combined exhaustion and merits motion, without giving Plaintiff notice that they intended to raise exhaustion, Defendants have effectively deprived Plaintiff of exhaustion discovery. The Standard Prisoner Case Management Order is somewhat ambiguous in this regard because it does not address whether a defendant may effectively "sandbag" a Plaintiff and assert lack of exhaustion in a merits motion for summary judgment after discovery has concluded. However, because Defendants' exhaustion motion lacks merit, the Court need not decide the issue of waiver.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants submit a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III while at ICF from November 15, 2017 through September 30, 2019. (ECF Nos. 125-5–125-10.) Although Defendants note that Plaintiff filed 55 Step III grievances during that time, they identify two pertaining to the issues in this case, Grievance ICF-17-11-1538-12E (1538 Grievance) and Grievance ICF-17-11-1537-27Z (1537 Grievance). In the 1538 Grievance,

Plaintiff complained that on November 15, 2017, Nurse "Boonty or Booty" examined him after he was gassed by Sgt. Conklin. (ECF No. 125-10 at PageID.1104.) Plaintiff stated that he told the nurse that his arms and hands were bleeding and bruised and his body felt like it had first-degree burns from the tear gas, but the nurse said she did not see any injuries and declined to treat Plaintiff. The 1538 Grievance was denied at Step I, and Plaintiff pursued it to Steps II and III. (*Id.* at PageID.1101–03.) Defendants concede that the 1538 Grievance exhausted Plaintiff's claim against Defendant Moody. (ECF No. 125 at PageID.767–68.)

In the 1537 Grievance, Plaintiff complained about being gassed by Defendant Conklin and the gas team. (ECF No. 125-10 at PageID.1109, 1111.) The grievance was rejected at Step I as non-grievable. (*Id.* at PageID.1110.) Plaintiff appealed the 1537 Grievance, and the rejection was upheld at Steps II and III. (*Id.* at PageID.1106–08.) Defendants argue that the 1537 Grievance does not exhaust Plaintiff's claims against Defendants Conklin, Burns, Martens, Simon, Watkins, Powers, Hengesbach, Gardner and Elliot because it was rejected at all three steps. However, this argument ignores Sixth Circuit caselaw holding that a prisoner cannot be required to exhaust administrative remedies regarding non-grievable issues. *See Owen v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues"). "The non-grievability of [an issue] through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim." *Owens*, 461 F.3d at 769 (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999), and *Rancher v. Franklin Cty.*, 122 F. App'x 240, 242 (6th Cir. 2005)). Thus, Plaintiff was not required to exhaust his claim.

Defendants argue that Plaintiff failed to properly exhaust his claim against Defendants Simon, Watkins, Powers, Hengesbach, Gardner, and Elliott because he has not filed any grievances against them.  In his response, Plaintiff argues that, because the men on the gas team were wearing gas masks and gas attire, he could not see their faces and therefore could not ascertain their identities.  Plaintiff states that when writing the 1537 Grievance, he named those members he thought he could identify but simply referred to the others as the "gas team."  (ECF No. 128 at PageID.1147.)  This was sufficient for proper exhaustion, particularly because Plaintiff stated in the grievance that he had asked for the critical incident report to obtain the names of the team members but had not received the report by the time he filed the grievance.  *See Williams v. Miron*, 2:16-CV-228, 2018 WL 309867, at *1 (W.D. Mich. Dec. 11, 2017) (recognizing that "inmates are often unaware of an individual's identity and involvement at the time a grievance is filed" and holding that naming "staff" broadly in the grievance sufficed to exhaust where the plaintiff could not identify the individual staff members because they were concealed behind masks and the door to his cell).

**B.     Merits**

**1.     Deliberate Indifference—Defendant Moody**

Plaintiff alleges that Defendant Moody was deliberately indifferent to his serious medical need in violation of the Eighth Amendment when she failed to provide him medical treatment after he was gassed.  According to Plaintiff, after he received a brief shower, Defendant Moody examined Plaintiff and asked him if he was in pain and needed medical attention.  Plaintiff told her that his arms and hands were bleeding, cut up, scraped, and bruised and that his body was on fire.  Nurse Moody told Plaintiff that he was fine and then left.  (ECF No. 128-1 at PageID.1182.)

8

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Plaintiff's claim against Defendant Moody fails on the objective prong because he presents no evidence of a sufficiently serious medical condition to support an Eighth Amendment violation. While Plaintiff alleges that his arms and hands were cut, scraped, and bleeding, Plaintiff presents no evidence showing that those injuries were anything more than routine *de minimis* injuries that are not sufficiently serious to satisfy the deliberate-indifference test. It is well established that injuries such as minor cuts and lacerations are not sufficiently serious to require medical treatment. *Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (citing *Blackmore*, 390 F.3d at 898); *see also Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment). "In other words, injuries such as bruises, cuts and abrasions which are treatable at home and with over-the-counter bandages or medications are not sufficiently serious to invoke the protection of the constitution." *Meyers v. City of Chardon*, No. 1:14CV2340, 2015 WL 1648992, at *10 (N.D. Ohio Apr. 13, 2015) (citing *Blackmore*, 390 F.3d at 896–98); *see also Finley v. Perry*, No.

9:06-cv-1524, 2010 WL 6427496, at *2, 11 (N.D.N.Y. July 13, 2010), *report and recommendation adopted*, 2011 WL 1302248 (N.D.N.Y. Mar. 31, 2011) (concluding that a "busted" lip, cuts and scratches, and minimal swelling did not constitute a serious medical condition). In short, Plaintiff fails to show that the cuts, scrapes, and bruises he claims he suffered were more than *de minimis* injuries. The same is true for Plaintiff's complaint that his skin was burning because of the tear gas. A claim of burning skin resulting from the use of a chemical agent, without more, is insufficient to satisfy the objective component of an Eighth Amendment claim. *See Catt v. Brown*, No. 1:17-cv-513, 2017 WL 2991714, at *4 (W.D. Mich. July 14, 2017) (allegations that the plaintiff was sprayed with pepper spray failed to support an Eighth Amendment claim because he alleged nothing "more than the normal after effects of being exposed to gas and/or chemical agents" (internal quotation marks omitted)); *see also Pullen v. Combs*, No. 1:17-cv-255, 2018 WL 3911398, at *12 (S.D. Ohio Aug. 15, 2018) (concluding that the plaintiff's allegations that he suffered burning skin "all night" from chemical spray was insufficient to satisfy the objective component of an Eighth Amendment claim). While Plaintiff alleges that he has a condition that renders him a high risk to side effects from use of chemical spray, he does not allege that he suffered any injury beyond the burning effects of the spray, *i.e.*, "he merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray." *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004). Moreover, Defendant Moody explains in her affidavit that the only treatment for burning skin caused by exposure to a chemical agent is application of cool water and air contact. (ECF No. 125-12 at PageID.1130.)

Plaintiff's claims also fail on the subjective prong of his deliberate indifference claim. Crediting Plaintiff's allegations, there is no evidence that Defendant Moody was aware of, and disregarded, a substantial risk of harm to Plaintiff. As noted above, Plaintiff's physical injuries

11

were non-serious, and the only symptom from the chemical spray Plaintiff report to Defendant Moody was that his skin was burning—a routine and non-serious effect of chemical spray.[4]

Thus, Defendant Moody is entitled to summary judgment.

### 2. Excessive Force

As set out in more detail above, the Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 101-02. The Supreme Court has held that, "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or

---

[4] Plaintiff also argues in his brief that, because he was at high risk for side effects from being gassed, Defendant Moody should have been at his cell while the gas team was using the gas. Even accepting Plaintiff's allegation as true, he provides no evidence that she had prior knowledge that the gas team was going to his cell and would be using gas. Regardless, Plaintiff's allegations present no basis for liability in this case.

shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

It is well established that the use of chemical spray is a constitutionally-permissible application of force when used to restore order or to gain an inmate's compliance. *See Jennings*, 93 F. App'x at 725; *White v. Fowler*, No. 88-2216, 1989 WL 88479, at *1 (6th Cir. Aug. 8, 1989) (affirming grant of summary judgment to corrections officer who used chemical spray on the plaintiff in order to restore discipline and security on a prison bus). Defendants Conklin, Burns, Martens, Simon, Watkins, Powers, Hengesbach, Gardner, and Elliot argue that Plaintiff's refusal to comply with Conklin's orders to be restrained, as described in the Critical Incident Report (ECF No. 125-2), as well as Plaintiff's extensive disciplinary record (including assault and battery on staff), justified the use of chemical spray on Plaintiff to gain his compliance. Defendants invite error in urging the Court to disregard Plaintiff's affidavit which, construed in the light most favorable to Plaintiff—as the Court must do on a motion for summary judgment, *Baker v. City of Trenton*, 936 F.3d 523, 526 n.1 (6th Cir. 2019)—creates a genuine issue of material fact as to whether Defendant Conklin used the chemical spray in a good faith effort to restore order or for purely malicious, sadistic, and retaliatory purposes (and the remaining Defendants failed to intervene) as Plaintiff alleges. *See Smith v. Bigham*, No. 1:17-cv-128, 2018 WL 2100518, at *6 (S.D. Ohio May 7, 2018), *report and recommendation adopted*, 2018 WL 2735648 (S.D. Ohio June 7, 2018) (denying summary judgment because "construing disputed facts in Plaintiff's favor as to the circumstances under which the pepper spray was allegedly deployed, the Defendant is not entitled to summary judgment because even if the injury that resulted was *de minimis*, the use of OC spray was for no reason other than in retaliation for Plaintiff's complaints, and therefore was purely malicious and sadistic").

Citing *Scott v. Harris*, 550 U.S. 372 (2007), Defendants argue that Plaintiff's version is "simply unbelievable." (ECF No. 125 at PageID.776.) But that argument would require the Court to make a credibility determination on summary judgment. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004). *Scott*, in which the defendants presented a video of the car chase that completely refuted the plaintiff's version of events, *id.* at 379–381, is inapplicable here because Defendants have not presented a video or any similar irrefutable form of evidence "utterly discredit[ing] . . . [Plaintiff's version so] that no reasonable jury could . . . believe[] him." *Id.* at 380. Accordingly, Defendants' motion should be denied as to the excessive force claim.

## IV.    CONCLUSION

For the reasons set forth above, I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 124) with regard to Plaintiff's deliberate indifference claim against Defendant Moody and **deny** the motion with regard to Plaintiff's excessive force claim against the remaining Defendants.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: July 10, 2020                                                      /s/ Sally J. Berens
                                                                                                       SALLY J. BERENS
                                                                                                       U.S. Magistrate Judge